UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PAUL WILLIAMS,<br>    *Plaintiff*, | |
| v. | No. 3:20-cv-1474 (JAM) |
| STEPHANIE KATZ,<br>    *Defendant*. | |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Plaintiff Paul Williams is a prisoner in the custody of the Connecticut Department of Correction ("DOC"). He has filed this *pro se* and *in forma pauperis* action alleging that defendant Dr. Stephanie Katz refused to provide him with dental treatment and then maliciously injured one of his healthy teeth during surgery to punish him for complaining about not receiving dental treatment.

Dr. Katz has moved for summary judgment. Because Williams did not properly exhaust his administrative remedies, I will grant the motion for summary judgment.

BACKGROUND

The following facts are drawn from the parties' summary judgment statements and the documents they reference.[1] Unless otherwise noted, facts are undisputed.

Dr. Katz is a general dentist who was employed by the DOC from May 2014 through November 2020 and assigned to Osborn Correctional Institution (Osborn) during Williams's

---

[1] Dr. Katz has filed a properly supported Local Rule 56(a)(1) statement of facts. Doc. #35-2. In response, Williams has filed a Local Rule 56(a)(2) statement of facts, *see* Doc. #42, but his statement does not include citations to evidentiary support for such denials as required under the Court's local rules. *See* D. Conn. L. Civ. R. 56(a)(3). Williams has also submitted a cursory affidavit accompanying his opposition papers. *See* Doc. #43. In describing his version of events, I rely primarily on the facts set forth in his opposition brief, *see* Doc. #44 at 1–3, which are derived from Williams's original complaint and incorporated into his operative second amended complaint, *see* Doc. #32 at 7–8 (¶¶ 12–13). I liberally construe the facts in Williams's opposition brief as a Local Rule 56(a)(2) statement because the contents of his complaints were sworn to under penalty of perjury. *See D'Andrea v. Nielsen*, 765 F. App'x 602, 603 n.1 (2d Cir. 2019).

1

incarceration there.[2] Williams claims that over a period of months while incarcerated at Osborn he repeatedly requested— but was denied—dental treatment for a problem with one of his teeth.[3]

Williams says that he sent an initial request to the Osborn Medical Department on December 3, 2019, stating that one of his teeth was causing him pain, but received no response.[4] On December 20, 2019, Williams says that he sent a second request regarding his painful tooth but again received no response.[5] Williams has not offered any evidence to show that he filed these requests, and Dr. Katz denies knowing about them.[6]

On February 6, 2020, Williams experienced excruciating pain in his head, mouth, and in the area of one of his teeth.[7] His face was swollen, he could not sleep, and he could barely eat or open his mouth without experiencing intense pain.[8] He says the medical department still had not answered any of his prior requests for medical attention.[9]

Williams says that a nurse came to his cell in March 2020 and stated that, due to the COVID-19 pandemic, he would not be seen by a physician or a dentist.[10] Williams asked the nurse to provide him with something in writing that documented the refusal to treat him.[11] The nurse declined and left without giving her name.[12]

Williams claims that on April 18, 2020, he submitted a third request to be seen by a medical provider, but received no response.[13] Again, Williams has no proof of his request, and

---

[2] Doc. #35-2 at 1 (¶ 1) (Dr. Katz's statement of facts).
[3] Doc. #43 at 1 (¶ 2).
[4] Doc. #44 at 1 (¶¶ 1-2).
[5] *Ibid*.
[6] Doc. #35-2 at 1 (¶ 3) (stating that Dr. Katz did not know of plaintiff's dental issue until May 14, 2020).
[7] *Id*. at 1-2 (¶ 2).
[8] *Id*. at 2 (¶ 3).
[9] *Ibid*.
[10] *Ibid*.
[11] *Ibid*.
[12] *Ibid*. (¶ 4).
[13] *Ibid*.

Dr. Katz denies receiving it.[14]

On May 14, 2020, Dr. Katz received an inmate request from Williams and saw him later that same day.[15] She contends that this was the first time she learned about Williams's dental issue.[16] The parties agree that Dr. Katz took an X-ray and diagnosed Williams with a non-restorable lower right molar.[17] Dr. Katz then prescribed ibuprofen and put Williams on the list for a tooth extraction in the future.[18]

Williams says that he was already in serious pain at this point.[19] His inmate request described his issue as an "emerge[n]cy" because his nerves were exposed and his "tooth really hurts when I don't take a pill," though Dr. Katz recorded his pain as intermittent and only at level 2.[20] Dr. Katz says that there was no acute infection in Williams's tooth and therefore no emergency.[21] She further explains that she did not perform surgery immediately because the Connecticut State Dental Association and American Dental Association were urging dentists to limit any aerosol-generating procedures such as tooth extractions due to the risk of contracting COVID-19, and she was particularly reluctant to operate because the DOC had a very small supply of the necessary personal protection equipment for such procedures.[22]

On June 8, 2020, Williams sent an inmate request to the Osborn Medical Department indicating that he had not yet received his monthly dosage of ibuprofen for his tooth.[23] On June 12, 2020, a staff member responded indicating "#21 tabs given by dental" and "refill requested

---

[14] Doc. #35-2 at 1 (¶ 3).
[15] Doc. #42 at 1-2 (¶ 2) (Williams's statement of facts in opposition); Doc. #37 at 2 (request).
[16] Doc. #35-2 at 1 (¶ 3).
[17] Doc. #42 at 2 (¶ 4).
[18] *Id.* at 3-4 (¶ 7).
[19] *Ibid.*
[20] Doc. #37 at 2-3.
[21] Doc. #35-2 at 1 (¶ 4).
[22] *Id.* at 1-2 (¶¶ 5-6).
[23] Doc. 37 at 5 (request).

3

from pharmacy."[24] Dr. Katz says that she never saw this request.[25]

Later that month, Williams suffered bleeding and swollen gums and discharge from the area of his infected tooth.[26] Williams complained to his block officer, but no one would help him.[27]

On June 26, 2020, Williams complained to a captain and lieutenants who told him he should file a grievance.[28] Williams says he filed a grievance but there was no response.[29] Once again, Williams has no proof of filing a grievance. Further, prison administrative records show that at no time during his incarceration at Osborn did Williams file a health services review.[30]

On July 19, 2020, Williams sent an inmate request to the dental department indicating that the ibuprofen was no longer working for his pain and requesting to be placed on the priority waitlist for his tooth extraction.[31] Dr. Katz responded on July 23, 2020, writing: "You are scheduled to see the Dental Dept. Thank you for your patience."[32]

On July 27, 2020, Williams could not take the pain any longer and told the block officer that he was in "excruciating pain" and that "I need to see the medical unit."[33] When admitted to the medical department, his pain was constant and at level 7.[34] Dr. Katz then extracted William's tooth.[35] During the extraction, an adjacent tooth was damaged.[36]

---

[24] *Ibid*.
[25] Doc. #35-2 at 2 (¶ 8).
[26] Doc. #44 at 2 (¶ 5).
[27] *Ibid*.
[28] *Ibid*. (¶ 6).
[29] *Ibid*.
[30] Doc. #35-2 at 4 (¶¶ 20-25); Doc. #48-1 at 1 (¶¶ 4-5) (declaration of Coordinator Samuda).
[31] Doc. #42 at 4 (¶ 9); Doc. #37 at 6 (request).
[32] Doc. #37 at 6.
[33] Doc. #44 at 2 (¶ 7).
[34] Doc. #37 at 7.
[35] *Ibid*.
[36] Doc. #44 at 2 (¶ 7); Doc. #43 at 1 (¶ 3).

Williams claims that Dr. Katz seemed upset throughout the procedure and that her attitude made him uncomfortable.[37] He says that when he asked her about the damage to the adjacent tooth, she told him: "Since you been rushing me to pull your bad tooth and complaining to everybody; now I fucked up one of your good t[ee]th, next time this will teach you to have patience."[38]

Dr. Katz denies making this statement.[39] And she denies intentionally loosening the filling on the adjacent tooth or otherwise retaliating against Williams for complaining about his dental treatment.[40] Instead, she explains that when using an oral surgery instrument to remove part of his injured tooth, she inadvertently loosened the silver filling on the adjacent tooth.[41] Dr. Katz notes that tooth extractions always carry some risk of damage to neighboring teeth and that Williams was informed of this risk in a consent form he signed prior to the surgery.[42]

The parties agree that after the filling came loose, Dr. Katz removed it and replaced it with a temporary filling material.[43] They further agree that Williams needed a permanent replacement filling.[44] Dr. Katz says that she could not permanently replace the filling immediately due to the risk of infection or high-pressure air entry into the socket of the removed tooth.[45]

Dr. Katz left DOC employment in November 2020.[46] In December 2020, Williams

---

[37] Doc. #43 at 1 (¶ 3).
[38] Doc. #44 at 3 (¶ 7).
[39] Doc. #35-2 at 3 (¶ 15).
[40] *Ibid*.
[41] *Id*. at 3 (¶ 12).
[42] *Ibid*. (¶ 16).
[43] Doc. #42 at 5 (¶ 13).
[44] *Ibid*.
[45] *Ibid*.
[46] *Id*. at 6-7 (¶ 17).

refused to attend an appointment with another dentist.[47] His block officer recorded Williams' explanation that he "has [a] pending lawsuit against dental and was advised not to be seen."[48] Williams contends that this is a mischaracterization of the facts.[49]

Williams initially brought claims against Osborn Medical Department and Dental Doctor Jane Doe.[50] In January 2021, I dismissed all claims against Osborn Medical Department but allowed Williams's claims to proceed against Dental Doctor Jane Doe, whom he subsequently identified as Dr. Katz.[51] The parties have briefed and argued the motion for summary judgment, and this ruling now follows.[52]

## DISCUSSION

The principles governing my review of a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). I must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proved at trial—to allow a reasonable jury to decide the case in favor of the opposing party. My role at summary judgment is not to judge the credibility of witnesses or to resolve close and contested issues but solely to decide if there are enough facts that remain in dispute to warrant a trial. *See generally Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (*per curiam*); *Benzemann v. Houslanger & Assocs., PLLC*, 924 F.3d 73, 78 (2d Cir. 2019).

Because Williams is a *pro se* party, his pleadings and submissions on summary judgment

---

[47] Doc. #37 at 11.
[48] *Ibid*.
[49] Doc. #42 at 7 (¶ 18).
[50] Doc. #1.
[51] Doc. #15 (initial review order); Doc. #14 (amended complaint).
[52] Doc. #35 (motion); Doc. #44 (opposition); Doc. #47 (oral argument on January 27, 2022).

must be given a liberal construction. "The policy of liberally construing *pro se* submissions is driven by the understanding that implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (*per curiam*).

Still, a party's *pro se* status does not relieve the party of the obligation to respond to a motion for summary judgment and to support the party's claims with evidence as the rules require. *See Nguedi v. Fed. Reserve Bank of New York*, 813 F. App'x 616, 618 (2d Cir. 2020). The Court's local rules ensure that a *pro se* party is thoroughly advised of the procedural requirements for opposing a summary judgment motion, *see* D. Conn. L. Civ. R. 56(b), and the defendants here have complied with the rule's requirement to serve on Williams a notice detailing the rules that govern a motion for summary judgment.[53]

The Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e(a), states that "[n]o action shall be brought with respect to prison conditions ... by a prisoner ... until such administrative remedies as are available are exhausted." This exhaustion requirement applies to all claims regarding "prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of all available administrative remedies must occur regardless of whether the remedies can provide the form of relief that the prisoner seeks. *See Booth v. Churner*, 532 U.S. 731, 740–41 (2001). Furthermore, prisoners must comply with all procedural rules regarding the grievance process prior to commencing an action in federal court. *See Woodford v. Ngo*, 548 U.S. 81, 90–93 (2006).

---

[53] Doc. #35-7.

Importantly, a prisoner is required to exhaust only those administrative remedies that are "available." 42 U.S.C. § 1997e(a); *see Ross v. Blake*, 578 U.S. 632, 642 (2016). An administrative remedy is unavailable when: (1) it "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) the administrative scheme is so opaque that it becomes incapable of use by the "ordinary prisoner," who cannot "discern or navigate it" or "make sense of what it demands"; or (3) prison administrators "thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation." *Id.* at 643–44.

The DOC administrative procedure relevant to this action is Administrative Directive 8.9 (AD 8.9), the DOC's Administrative Remedy for Health Services.[54] AD 8.9 provides for administrative review in at least three stages. *See Cruz v. Naqvi*, 2022 WL 3576648, at *4 (D. Conn. 2022) (describing requirements of AD 8.9); *Minnifield v. Dolan*, 2017 WL 1230840, at *6 (D. Conn. 2017) (same). First, the prisoner must seek an informal resolution face to face with the appropriate staff member or with a supervisor via a written request.[55] The supervisor must respond within 15 days of receiving a written request.[56]

Second, if informal resolution is unsuccessful, the prisoner may file a formal request for a health services review. Using a health services remedy form (CN 9602), the prisoner can apply for review of "a decision to provide no treatment," setting in motion a medical review of the prisoner's existing treatment plan.[57]

---

[54] A new version of Directive 8.9 became effective on April 30, 2021. *See Administrative Remedy for Health Services*, CONN. DEP'T OF CORR., https://portal.ct.gov/-/media/DOC/Pdf/Ad/ad0809pdf.pdf (last visited August 23, 2022). Unless otherwise noted, in this ruling I refer to the prior version in effect during the events at issue in this litigation. *See* Doc. #35-6 (prior Administrative Directive 8.9).
[55] Doc. #35-6 at 4 (¶ 10).
[56] *Ibid*.
[57] *Ibid*. (¶ 11).

Third, if the prisoner is dissatisfied with the coordinator's response regarding an administrative grievance, he has a right of appeal to the facility health services director.[58] Records of all requests and appeals must be maintained by the health services review coordinator.[59]

The problem for Williams is that he did not exhaust his administrative remedies as required under AD 8.9. Williams appears to concede as much. All he claims is that he complained in June 2020 about the delay in treatment and then filed a written request to which he never received a response.[60]

Further, Williams makes no argument that he ever filed a health services remedy (CN 9602) or administrative grievance following the oral surgery during which he claims Dr. Katz vindictively injured him. Nor has he put forward any evidence to counter the submissions from health services coordinators at Osborn and Robinson Correctional Institute (where Williams was later incarcerated) showing that he never filed any health services remedies between May 2019 and the present.[61] Williams argues that the health services coordinators "have no personal knowledge of the events which transpired between [Dr.] Katz and Plaintiff Willi[am]s."[62] But the affidavits of the coordinators establish their personal knowledge of the contents of the DOC's records of grievances which are otherwise admissible as business records pursuant to Fed. R. Evid. 803(6).

Because Williams has not offered any evidence contesting Dr. Katz's evidence that he failed to exhaust administrative remedies under AD 8.9, summary judgment is appropriate in

---

[58] *Id*. at 5 (¶ 12).
[59] *Ibid*. (¶ 13); *id*. at 3 (¶ 8).
[60] Doc. #44 at 2 (¶ 6).
[61] Doc. #35-2 at 4 (¶¶ 20-25); Doc. #48-1 at 1 (¶¶ 4-5); Doc. #48-2 at 1 (¶¶ 4-5) (declaration of Coordinator Humes).
[62] Doc. #44 at 5.

favor of Dr. Katz. *See Dean v. Iozzia*, 2022 WL 619693, at *1 (2d Cir. 2022) (affirming summary judgment against prisoner plaintiff for failure to exhaust administrative remedies because he filed a grievance but did not file an appeal after he did not receive a timely response); *Cruz*, 2022 WL 3576648, at *5–6 (granting summary judgment against prisoner plaintiff for failure to show that he filed a health services review as required under AD 8.9) .

Williams cannot create a factual dispute simply by arguing that he "could not have been expected to use the grievance system to seek administrative relief" because "officials allegedly failed to respond to his written complaint and his written complaint alone." *Osborn v. Williams*, 2017 WL 6731714, at *6 (D. Conn. 2017), *aff'd,* 792 F. App'x 88 (2d Cir. 2019). When informal resolution of his complaints about inadequate dental treatment proved unsuccessful, Williams had the opportunity to file a health services review. Complaining to prison officials and filing an initial written request does not suffice; to exhaust administrative remedies, an inmate must "fully complete the available administrative process." *Minnifield*, 2017 WL 1230840, at *8.

Williams does not argue that the administrative procedures under AD 8.9 are "not capable of use to obtain relief" or otherwise "unavailable" such that his failure to exhaust would be excused under the PLRA's exacting standard. *Rucker v. Giffen*, 997 F.3d 88, 93 (2d Cir. 2021). For example, Williams does not make any argument that "the grievance process set out in Directive [8.9] is so confusing that no reasonable prisoner can use it," *Osborn*, 2017 WL 6731714, at *5. Nor has he made "a clear and persuasive showing" that prison staff were "consistently refusing to provide grievance forms, ignoring grievances, and in some cases throwing grievances in the trash," such that no remedies were in fact available. *V.W. by &*

*through Williams v. Conway*, 236 F. Supp. 3d 554, 585 (N.D.N.Y. 2017).[63]

Finally, Williams claims without elaboration that his failure to exhaust administrative remedies "has no bearing" on his claims against Dr. Katz in her individual capacity.[64] But "claims covered by the PLRA are typically brought under 42 U.S.C. § 1983" against officials in their individual capacity, and failure to exhaust can be raised as an affirmative defense in such actions. *Jones v. Bock*, 549 U.S. 199, 212 (2007); *see also Williams v. Sposato*, 2019 WL 5310222, at *9 (E.D.N.Y. 2019) ("Since administrative remedies were available to Williams, and he did not properly exhaust any of his remaining claims against [defendants] in their individual capacity, … the PLRA precludes him from proceeding with those claims in this Court."). As such, Williams has failed to exhaust his administrative remedies, and the PLRA bars his claims against Dr. Katz.

One last point. In this context, a court may sometimes dismiss a complaint without prejudice on the ground that the inmate can properly exhaust his administrative remedies and then reinstitute his suit. *See, e.g., Waters v. Blumberg*, 2020 WL 3451853, at *13 (D. Conn. 2020). But whereas the prior version of AD 8.9 did not contain a statute of limitations for the initial filing of a health services remedy, the new AD 8.9—in effect since April 30, 2021—contains a time limitation of 30 days.[65] It therefore appears that Williams will not be able to

---

[63] For the first time at oral argument, Williams claimed that he could not file an administrative health remedy because Osborn was locked down due to the COVID-19 pandemic. *See Gibson v. Rodriguez*, 2021 WL 4690701, at *5 (D. Conn. 2021) (considering similar circumstances). But Williams made no such allegation in his verified complaint, his sworn affidavit, or his Rule 56(a) statement of facts, and he has thereby waived any argument on this basis.
[64] Doc. #44 at 9.
[65] *See Administrative Remedy for Health Services,* https://portal.ct.gov/-/media/DOC/Pdf/Ad/ad0809pdf.pdf at 7, ¶ 6(b)(iii)(4) (health services remedy must be filed within 30 calendar days of the occurrence or discovery of the alleged wrong); *id.* at 3 ¶ 4(h) ("All inmates shall be subject to the time limitations established within this Directive. Any request for a Health Services Administrative Remedy that does not adhere to the time limitations set forth shall be rejected.").

exhaust his administrative remedies, such that his complaint should be dismissed with prejudice.

I decline to exercise supplemental jurisdiction over Williams's remaining state law claims because the PLRA exhaustion requirement does not apply to those claims and Williams can still pursue them in state court if he wishes. *See Alston v. Daniels*, 2015 WL 7257896, at *10 (D. Conn. 2015); 28 U.S.C. § 1367(c)(3).

## CONCLUSION

Because there is no genuine factual dispute that Williams failed to exhaust his administrative remedies, the Court GRANTS the motion for summary judgment and DISMISSES the complaint with prejudice. The Court DENIES Williams's motion for an emergency status conference (Doc. #49) because the Court is satisfied on the basis of Dr. Katz's response and affidavit (Doc. #54) that Williams has not been forced to undergo any unwanted dental treatment or denied any necessary dental treatment and that dental care remains available to him in prison. If Williams continues to believe that he is not receiving appropriate dental treatment in prison, he may file a new complaint after exhausting administrative remedies.

The Clerk of Court shall close this case. It is so ordered.

Dated at New Haven this 23rd day of August 2022.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge